**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | |
|---|---|
| IN RE: J.O., A MINOR | : IN THE SUPERIOR COURT OF |
| | :   PENNSYLVANIA |
| | : |
| APPEAL OF: D.O., MOTHER | : |
| | : |
| | : |
| | : |
| | : |
| | : |
| | : No. 2748 EDA 2024 |

Appeal from the Decree Entered September 23, 2024
In the Court of Common Pleas of Wayne County Civil Division at No(s):
2024-00013

| | |
|---|---|
| IN RE: A.O., A MINOR | : IN THE SUPERIOR COURT OF |
| | :   PENNSYLVANIA |
| | : |
| APPEAL OF: D.O., MOTHER | : |
| | : |
| | : |
| | : |
| | : |
| | : No. 2749 EDA 2024 |

Appeal from the Decree Entered September 23, 2024
In the Court of Common Pleas of Wayne County Civil Division at No(s):
2024-00014

BEFORE:   DUBOW, J., KUNSELMAN, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY DUBOW, J.:                    **FILED APRIL 3, 2025**

Appellant, D.O. ("Mother"), appeals from the September 23, 2024 decrees entered in the Wayne County Court of Common Pleas that terminated her parental rights to 13-year-old J.O. and 12-year-old A.O. (collectively, "Children"). Mother's counsel, Oressa Campbell, Esq., has filed a petition to

_____

[*] Retired Senior Judge assigned to the Superior Court.

withdraw as counsel and an **Anders** brief,[1] to which Mother has not filed a response. Upon review, we grant Attorney Campbell's petition to withdraw and affirm.

## A.

We glean the relevant factual and procedural history from the trial court opinion and the certified record. J.O. was born in May 2011, and A.O. was born in April 2012. Wayne County Children and Youth Services ("the Agency") became involved with the family in 2018 and placed Children in the care of their maternal grandmother ("Maternal Grandmother").[2] In 2020, the trial court granted Maternal Grandmother Subsidized Permanent Legal Custody of Children and discharged the case. While Children lived with Maternal Grandmother, Mother and Maternal Grandmother had privately agreed to allow Mother to visit with Children. However, there were "times [when] the police had to be called because [Mother] became unreasonable and [Children] felt not safe [*sic*]." N.T. Hr'g, 9/20/24, at 39.

When Maternal Grandmother passed away in 2023, the Agency placed Children in the care of their maternal aunt and uncle ("Maternal Aunt and Uncle"), who began residing in Maternal Grandmother's home.

The privately-arranged visits between Mother and Children stopped after Maternal Grandmother's passing but, at some point prior to October of

---

[1] **Anders v. California**, 386 U.S. 738 (1967).

[2] The record does not indicate why the Agency originally became involved with the family.

2023, Children had "one or two visits with [Mother] therapeutically with Susan Grierson[3] . . . .and it was deemed that it was not going well[,]" so visits "w[ere] left to [Children's] comfort level." *Id.* at 11, 40. The current court order regarding visitation states that it should occur "[w]hen deemed therapeutically appropriate." *Id.* at 11.

In March 2023, the Agency re-established a permanency plan for Children. Mother's objectives included obtaining a mental health evaluation and following all recommendations, having a clinical meeting with the agency for visitation to resume, appropriately parenting and disciplining Children, and maintaining appropriate housing. Mother failed to comply with these objectives.

Crucially, Mother failed to comply with recommended mental health treatment. She failed to obtain a mental health evaluation until May 2024, when she had an evaluation with John Seasock, Psy.D., L.P.C. Dr. Seasock evaluated Mother over four sessions in May and June 2024 and diagnosed her with Delusional Disorder-persecutory type. He recommended, *inter alia*, that Mother maintain stable housing and obtain mental health treatment and that she only resume being Children's primary caregiver once she had complied with these conditions. Ex. 4-Psychological Evaluation at 1 (unpaginated).

Mother failed to comply with Dr. Seasock's recommendations, and thus, he never deemed visitation therapeutically appropriate. She also never

---

[3] Ms. Grierson's title and role are not clear from the record.

attended a clinical meeting with the agency. Accordingly, subsequent visitation did not occur. N.T. Hr'g at 11-14, 23.

Mother also failed to maintain appropriate housing. Although Mother consistently states that she owns and lives at Maternal Grandmother's former house, Maternal Aunt and Uncle live in that house with Children. Accordingly, Mother is not permitted to be there. Mother has pending criminal charges relating to trespassing at Maternal Grandmother's house in 2023. Agency caseworker Shannon Guinard offered Mother assistance in finding housing through an unnamed program in Wayne County, but Mother refused. Statement of Reasons, 10/28/24, at 4; N.T. Hr'g at 21.

J.O. continues to live with Maternal Aunt and Uncle and is doing well in the home. A.O. has attended boarding school since February 2024 but continues to live with Maternal Aunt and Uncle on school breaks. She has been doing well both with Maternal Aunt and Uncle and while away at school.

On July 10, 2024, the Agency filed identical petitions to terminate Mother's parental rights to each of the Children. The petitions stated that the Agency placed Children with Maternal Aunt and Uncle because "there continues to be concerns about [Mother's] mental health[;]" she was unsuccessful in facilitating Children's return home and "has not received any services at this time[;]" and she "threatened to pick up [Children] from school" during the dependency proceeding. Petitions for Termination of Parental Rights, 7/10/24, at ¶ 9. This led the Agency to determine that Mother was "not a safe and appropriate parent." *Id.* The petitions also alleged that

Mother had remained homeless during "much of the dependency [proceeding,]" "has not consistently complied with mental health treatment[,]" "has pending criminal charges related to trespassing to [*sic*] a home [in which] she insists she resides[,]" and has not complied with a Parental Fitness Evaluation. *Id.* at ¶ 11. Finally, the Agency stated that Children are "afraid to go out in public for fear of" seeing Mother. *Id.*

The parties proceeded to a hearing on September 20, 2024. Attorney Campbell represented Mother, who was present. R.O. ("Father") failed to appear, but his counsel was present. Lindsey Collins, Esq. served as both Children's legal counsel and Guardian *ad Litem* ("GAL") after the court determined there was no conflict in counsel serving in the dual role. Statement of Reasons at 1, n.1.

The Agency presented testimony from Agency caseworker Shannon Guinard and Dr. Seasock, and Mother testified on her own behalf. First, Ms. Guinard testified consistently with the above facts. She also rated Mother's compliance with the permanency plan as "minimal" as of July 25, 2023, October 17, 2023, and January 9, 2024, and "moderate" as of April 9, 2024 and the date of the hearing on September 20, 2024. N.T. Hr'g at 19.

Ms. Guinard also testified that Children are "very uncomfortable in [Mother's] presence." *Id.* at 12. She further testified that Mother has observed Children while they were in the community—J.O. while he was at the park, and A.O. while she and Ms. Guinard met with A.O.'s counselor at a restaurant. *Id.* at 23-24. She further testified that, while one of Mother's

objectives was to appropriately parent and discipline Children, Mother has not had a chance to meet that objective because Children had not lived with her in 6 years.

Ms. Guinard further testified that Children have been in their current placement for 18 months, and that termination of parental rights is in Children's best interest so that they may achieve permanency with Maternal Aunt and Uncle. She explained that Children are bonded with Maternal Aunt and Uncle, are not bonded with Mother, and have asked for termination of Mother's parental rights. Finally, Ms. Guinard testified that the conditions that led to their original placement in 2018 have not been resolved.

Dr. Seasock testified that he evaluated Mother in May and June 2024 for the purpose of resuming custody.[4] He explained that he diagnosed Mother with Delusional Disorder, which means that she "has a fixed belief system that [she] believes is true no matter what evidence or contrary information [is provided,]" and that her disorder is the "persecutory" type, meaning that when someone challenges a held belief, the individual perceives persecution and becomes agitated and "there's reactionary mood disturbance." N.T. Hr'g at 47. Dr. Seasock testified that Mother's delusions relate to her belief that she was permitted to be at Maternal Grandmother's former house, the delusions persist even though Mother is not permitted to be there, and

---

[4] Dr. Seasock testified that their visits continued into July 2024, but according to the evaluation, the last session was on June 28, 2024. Ex. 4-Psychological Evaluation at 1 (unpaginated).

Maternal Aunt and Uncle continue to call the police when she goes there, resulting in legal trouble for Mother. *Id.* at 48.

Dr. Seasock further testified that he recommended that Mother maintain housing for 6 months and get treatment if these delusions persisted. He also noted that her delusions do not affect Mother's ability to work. He also testified that Mother was cooperative when meeting with him, but that he does not know if she followed his recommendation about mental health treatment.

Regarding Children, Dr. Seasock explained that he met with Children multiple times during the fall and winter of 2023, prior to Mother's evaluation. He testified that he conducted an evaluation to ascertain Children's attachment to Mother from which he concluded that Children do not have a bond with Mother. He further testified that Children do not want to see Mother and, in fact, the prospect of contact with her makes them anxious. Dr. Seasock opined that he "can't force a psychological bond" and attempting to do so would be detrimental to Children. *Id.* at 50.

Finally, Mother testified on her own behalf. She explained that she was employed until February 2024, when she could no longer work because she no longer had access to a vehicle. She maintained that she initially reached out to Dr. Seasock in December 2023, but that she has not received a mental health diagnosis. She also stated that she purchased Maternal Grandmother's house and that she currently rents a room in another person's apartment. She asserted that she put forth her best effort to comply with the permanency plan, that she can be an appropriate parent, and that she does not think

termination of her parental rights is in Children's best interests. Finally, she introduced photographs from November 2022 that showed her engaging in activities with Children while they lived with Maternal Grandmother.

Following the hearing, the court changed Children's permanency goals from reunification to adoption, and on September 23, 2024, the court issued decrees terminating the parental rights of Mother and Father.[5]

**B.**

Mother timely appealed. Both Mother and the trial court complied with Pa.R.A.P. 1925. On December 16, 2024, Attorney Campbell filed an ***Anders*** brief indicating that, upon review, Mother's appeal is wholly frivolous. Mother did not respond.

In the ***Anders*** brief, Attorney Campbell indicated that Mother wished to raise the following issues for our review:

> 1. Are there any non-frivolous issues preserved for appeal?
>
> 2. Whether the trial court erred as a matter of law in determining that the parental rights of the Appellant mother, D.O., was warranted?
>
> 3. Whether the trial court erred as a matter of law in determining that the termination of parental rights of the Appellant mother, D.O., would serve the developmental, physical and emotional needs and welfare of the minor child?

***Anders*** Br. at 5.

**C.**

_____

[5] Father is not a party to this appeal.

As a preliminary matter, we address appellate counsel's request to withdraw as counsel. "When presented with an *Anders* brief, this Court may not review the merits of the underlying issues without first passing on the request to withdraw." *Commonwealth v. Daniels*, 999 A.2d 590, 593 (Pa. Super. 2010). To withdraw from an appeal pursuant to *Anders*, our Supreme Court has determined that counsel must meet the following requirements:

(1) provide a summary of the procedural history and facts, with citations to the record;

(2) refer to anything in the record that counsel believes arguably supports the appeal;

(3) set forth counsel's conclusion that the appeal is frivolous; and

(4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Commonwealth v. Santiago*, 978 A.2d 349, 361 (Pa. 2009).

Attorney Campbell has complied with the mandated procedure for withdrawal. Additionally, she confirms that she sent Mother a copy of the *Anders* brief and petition to withdraw, as well as a letter explaining to Mother that she has the right to retain new counsel, proceed *pro se*, and to raise any additional points. *See Commonwealth v. Millisock*, 873 A.2d 748, 751-52 (Pa. Super. 2005) (describing notice requirements).

Because counsel has satisfied the above requirements, we will address the substantive issues raised in the *Anders* brief. We must "make a full examination of the proceedings and make an independent judgment to decide

whether the appeal is in fact wholly frivolous." ***Santiago***, 978 A.2d at 355 n.5 (citation omitted); ***see also Commonwealth v. Yorgey***, 188 A.3d 1190, 1197 (Pa. Super. 2018) (*en banc*) (noting ***Anders*** requires the reviewing court to "review 'the case' as presented in the entire record with consideration first of issues raised by counsel.").

## D.

In cases involving the involuntary termination of parental rights, our review is limited to determining whether the trial court's conclusion is supported by competent evidence. ***In re Adoption of L.A.K.***, 265 A.3d 580, 591 (Pa. 2021). When we review a trial court's decision to grant or deny a petition to involuntarily terminate parental rights, we must accept the findings of fact and credibility determinations of the trial court if the record supports them. ***In re T.S.M.***, 71 A.3d 251, 267 (Pa. 2013). "If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion." ***Id.*** (citation omitted). "Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand." ***In re R.N.J.***, 985 A.2d 273, 276 (Pa. Super. 2009) (citation omitted). We may not reverse "merely because the record would support a different result." ***T.S.M.***, 71 A.3d at 267. We give great deference to the "trial courts that often have first-hand observations of the parties spanning multiple hearings." ***Id.*** "The trial court is free to believe all, part, or none of the evidence presented, and is likewise free to make all

credibility determinations and resolve conflicts in the evidence." ***In re M.G.***, 855 A.2d 68, 73-74 (Pa. Super. 2004) (citation omitted).

It is axiomatic that "[p]arents enjoy a fundamental right to make decisions regarding the care, custody and control of their children. It cannot be denied that significant and permanent consequences for both the parent and child can follow the termination of parental rights, as there is an undeniable importance in a child's relationship with a biological parent." ***L.A.K.***, 265 A.3d at 591 (internal citations omitted). Accordingly, "[i]n recognition of the gravity attendant to the termination of parental rights, the moving party must establish the statutory grounds by clear and convincing evidence; that is, evidence that is so clear, direct, weighty and convincing as to enable a trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts [at] issue." ***Id.*** at 592 (citations and internal quotation marks omitted).

Section 2511 of the Adoption Act, 23 Pa.C.S. § 2511, which governs termination of parental rights, requires a bifurcated analysis. "Initially, the focus is on the conduct of the parent." ***In re Adoption of A.C.,*** 162 A.3d 1123, 1128 (Pa. Super. 2017) (citation omitted). As discussed above, "[t]he party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a)." ***Id.*** (citation omitted). If the court determines that the parent's conduct warrants termination of her parental rights, the court then engages in "the second part of the analysis pursuant to Section 2511(b):

- 11 -

determination of the needs and welfare of the child under the standard of best interests of the child." *Id.* (citation omitted). Notably, we need only agree with the court's decision as to any one subsection of Section 2511(a), as well as Section 2511(b), to affirm the termination of parental rights. *In re K.Z.S.*, 946 A.2d 753, 758 (Pa. Super. 2008). In its opinion, the court presented findings that supported termination under Sections 2511(a)(2) and (5). We concentrate our analysis in this case on Section 2511(a)(2).

Section 2511(a)(2) provides for termination of parental rights where the petitioner demonstrates by clear and convincing evidence that "[t]he repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent." 23 Pa.C.S. § 2511(a)(2); *In re Adoption of S.P.*, 47 A.3d 817, 827 (Pa. 2012). The grounds for termination of parental rights under Section 2511(a)(2) due to parental incapacity are not limited to affirmative misconduct; "those grounds may [also] include acts of refusal as well as incapacity to perform parental duties." *In re Adoption of C.D.R.*, 111 A.3d 1212, 1216 (Pa. Super. 2015) (citation omitted), *abrogated on other grounds by In re K.T.*, 296 A.3d 1085 (Pa. 2023). "Parents are required to make diligent efforts toward the reasonably prompt assumption of full parental duties." *In re C.M.K.*, 203 A.3d 258, 262 (Pa. Super. 2019). Notably, a "parent's vow to cooperate, after a long period of uncooperativeness regarding

the necessity or availability of services, may properly be rejected as untimely or disingenuous." *In re Z.P.*, 994 A.2d 1108, 1118 (Pa. Super. 2010) (citation omitted).

\* 

The trial court determined that Mother has not provided "essential parental care, control, and subs[iste]nce necessary for [Children's] mental well-being[]." Statement of Reasons at 5. Specifically, it found that Mother's progress has been "minimal throughout the dependency period," noting that she failed to obtain appropriate housing and refused mental health treatment despite her diagnosis. *Id.* at 4-5. It also noted that Children have been with Maternal Aunt and Uncle for 18 months and that they deserve permanency. *Id.* at 5.

Based on our review, we conclude that the trial court properly exercised its discretion in terminating Mother's parental rights pursuant to Section 2511(a)(2). Mother failed to comply with the permanency plan, specifically by failing to attend mental health treatment sessions and acquire stable housing. Due to her lack of compliance with mental health treatment, visitation was not therapeutically appropriate, and thus, it never resumed. She also remains without stable housing. Accordingly, the record supports the trial court's conclusion that Mother failed to provide essential parental care, control, and subsistence to Children. Thus, we discern no abuse of discretion in the court's decision to terminate Mother's parental rights under Section 2511(a)(2).

**E.**

Regarding Section 2511(b), our analysis focuses on the effect that terminating the parental bond will have on the children. We review "whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child." *In re Adoption of J.M.*, 991 A.2d 321, 324 (Pa. Super. 2010). It is well settled that "[i]ntangibles such as love, comfort, security, and stability are involved in the inquiry into needs and welfare of the child." *In re C.M.S.*, 884 A.2d 1284, 1287 (Pa. Super. 2005).

"One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond." *In re Adoption of N.N.H.*, 197 A.3d 777, 783 (Pa Super. 2018) (citation omitted). Moreover, the trial court may consider "intangibles, such as the love, comfort, security, and stability the child might have with the [adoptive resource]." *In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011) (citation omitted). Ultimately, the concern is the needs and welfare of the child. *Z.P.*, 994 A.2d at 1121.

*

The trial court found that Children are doing well with Maternal Aunt and Uncle, who have been providing for their needs and who are an adoptive resource. Statement of Reasons at 3, 5. The court also explained that Children do not have a bond with Mother, they are afraid to see Mother in public, and they requested to have no visitation with her. *Id.* at 4-5. Finally,

the court found that Children have been with Maternal Aunt and Uncle for 18 months and deserve permanency. *Id.* at 5.

The record supports the trial court's findings. Notably, Children have not lived with Mother for over six years. The court heard undisputed testimony from Ms. Guinard that Children are doing well with Maternal Aunt and Uncle, who meet all their needs. The court also heard testimony from both Dr. Seasock and Ms. Guinard that Children have no bond with Mother and, from Ms. Guinard, that Children are in favor of termination. *See* N.T. Hr'g at 14, 53. Accordingly, we discern no abuse of discretion in the court's determination that termination of Mother's parental rights is in the best interests of Children.

**F.**

Following our review of the issues raised in counsel's *Anders* brief, we agree with counsel that the trial court did not abuse its discretion in terminating Mother's parental rights. In addition, our independent review of the proceedings reveals there are no issues of arguable merit to be raised on appeal. Accordingly, we grant Attorney Campbell's petition to withdraw as counsel and affirm the decrees terminating Mother's parental rights.

Decrees affirmed. Petition to withdraw as counsel granted.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 4/3/2025